IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BARBARA WOOD,

    Plaintiff,

v.

IGATE TECHNOLOGIES, INC.,

    Defendant.

No. C 15-00799 JSW

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now before the Court is the motion for summary judgment filed by Defendant iGATE Technologies, Inc. ("Defendant"). The Court has considered the parties' papers, relevant legal authority, and the record in this case and hereby DENIES IN PART AND GRANTS IN PART Defendant's motion for summary judgment.

**BACKGROUND**

Plaintiff Barbara Wood entered into a written contract with her employer, Defendant, as a director of sales to solicit new business. (First Amended Complaint ("FAC"), ¶ 7; Declaration of Sacha M. Steenhoek ("Steenhoek Decl."), Ex. A2.) The contract provided that she would receive a commission of two percent of sales for the first two years of any new business she generated. (*Id.*; Declaration of Jon Hagen ("Hagen Decl."), ¶ 4, Ex. A at 3; Declaration of Barbara Wood ("Wood Decl."), ¶ 6.) However, Plaintiff would be paid commission only if she remained employed on the date the payout was due. (FAC, ¶ 7; Steenhoek Decl., Ex. A4 at 3.) Plaintiff worked for two years to obtain a business deal with a prospective customer, CNA. (FAC, ¶ 8; Wood Decl., ¶ 5.) In 2013, Plaintiff was involuntarily removed from the account, but she alleges that she was promised orally and in writing that she would receive her

commission if the deal was secured.  (FAC, ¶¶ 10, 11; *see also* Steenhoek Decl., Exs. A12, A14; Wood Decl., ¶¶ 10, 11.)  While still employed but having been taken off the account, Plaintiff was informed that she would not receive any commission from the CNA deal.  She repeatedly complained to Defendant that she was entitled to the commission if the deal moved forward.  (FAC, ¶¶ 8-10; Woods Decl., ¶¶ 11, 16, 20.)  On February 3, 2014, Defendant terminated Plaintiff's employment.  (FAC, ¶ 10; Woods Decl., ¶ 21.)  Plaintiff alleged she was discharged in retaliation for complaining in order for Defendant to avoid paying her the commission at the event of the CNA deal closing, and commissions for the Humana and Aflac accounts she accrued from January 2014 through August 2014.  (FAC, ¶¶ 10, 18.)  The first, preliminary statement of work agreement with CNA was signed on March 17, 2014, with an effective date of March 1, 2014.  (Declaration of Joseph Clapp ("Clapp Decl."), ¶ 6; Steenhoek Decl., Ex. B2.)

On October 10, 2014, Plaintiff filed a complaint in the Superior Court of California, County of Alameda against Defendant.  After removal to federal court based on diversity jurisdiction, Plaintiff filed an amended complaint before this Court on March 23, 2015.  The amended complaint contained four additional breach of contract claims related to Plaintiff's commissions on the Humana and Aflac accounts, as well as Plaintiff's restricted stock agreements dated October 9, 2013 and May 23, 2013.

Defendant moved to dismiss the claims on the basis that there were no viable causes of action sounding in contract for commissions or shares allegedly owed where the explicit terms of the employment contract set out the requirement that Plaintiff continue to be employed at the time of the vesting of shares and the earning of commissions.  The Court denied the motion to dismiss on the basis that Plaintiff's stated a claim based upon the facts she alleged – that Defendant had prevented the condition precedent of Plaintiff's continued employment by terminating Plaintiff in bad faith in an effort to avoid its contractual obligations.

After the close of discovery, Defendant again moved for judgment in its favor on Plaintiff's contract-related claims now based upon the evidentiary record.  In sum, Defendant contends that Plaintiff cannot prevail on her contract claims because there is evidence in the

record that her termination was based upon poor performance. In addition to many of the same legal arguments the Court found unpersuasive at the motion to dismiss phase, Defendant now argues that the decision to terminate Plaintiff was not to avoid paying the disputed commissions, but rather was based upon her poor performance record. In addition, Defendant moves for summary adjudication on Plaintiff's causes of action for wrongful termination in violation of public policy and retaliation under California state labor laws on the basis that these state statutes do not apply extraterritorially.

The Court will address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.    Applicable Legal Standards.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"); *see also* Fed. R. Civ. P. 56(e). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(e)(3).

**B.     Breach of Contract Claims.**

As the Court has already indicated in its previous ruling on Defendant's motion to dismiss, in order to state a claim for breach of contract, plaintiff must allege (1) the existence of a contract; (2) that she has performed or that her nonperformance is excused; (3) defendant's breach of the contract; and (4) damages resulting from the breach. *See Acoustics, Inc. v. Trepte Construction Co.*, 14 Cal. App. 3d 887, 913 (1971). Additionally, "where the defendant's duty to perform under the contract is conditioned on the happening of some event, the plaintiff must prove that the event transpired." *Consol World Investments, Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992). The California Supreme Court recognizes "contract principles prohibiting efforts by one party to a contract to prevent completion by the other party." *Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 622 (2009). "While the public policy in favor of full and prompt payment of an employee's earned wages is fundamental and well established, nothing in the public policy of this state concerning wages . . . transforms a contingent expectation of receiving bonuses into an entitlement." *Id.* at 621. "Only when an employee satisfies the condition(s) precedent to receiving incentive compensation, which often includes remaining employed for a particular period of time, can that employee be said to have earned the incentive compensation (thereby necessitating payments upon resignation or termination)." *Id.*

"California courts have consistently characterized bonus and profit-sharing plans as constituting an offer of the stated benefits in exchange for the service of an employee, and upon the employee's completion of the required services in accordance with the terms of the plan, a

4

binding contract is formed under which the employer is obligated to deliver the promised benefits." *Neisenderf v. Levi Strauss & Co.*, 143 Cal. App. 4th 509, 523 (2006). "Termination (whether voluntary or involuntary) does not necessarily impede an employee's right to receive a commission where no other action is required on the part of the employee to complete the sale leading to the commission payment." *Schachter*, 47 Cal. 4th at 621.

Here, after the collection of evidence, Defendant has again moved the Court to find that Plaintiff cannot prevail on her breach of contract claims because she failed to satisfy the condition precedent to receiving the commissions and stock over which this case was filed. The terms of the Plaintiff's contract for compensation clearly indicate that she must have still been employed by Defendant at the time to receive the commissions and stock owed. (Steenhoek Decl., Ex. A, Ex. 4 at 3; Ex. A at 44:3-16.) And, under California law, a person's right to commissions depends upon the terms of the contract for compensation. *See Steinhebel v. LA Times Commissions*, 126 Cal. App. 4th 696, 705 (2005) ("contractual terms must be met before an employee is entitled to a commission."). Plaintiff argues, as she did at the motion to dismiss phase, that she was terminated because she complained about not receiving the commissions to which she says she was entitled or in order to prevent her from being employed at the payout dates.

In *Schachter*, the court held that it was plaintiff's actions, not the employer's, that resulted in his loss of contingent incentive compensations. 47 Cal. 4th at 622. In that case, the plaintiff had voluntarily terminated his employment before his restricted stock fully vested and sought payments for the elapsed portion of a two-year vesting period of a forfeited stock. *Id.* at 621. Plaintiff alleged that the percentage of his compensation he had earned constituted wages that were unpaid following his resignation. *Id.* at 619. The court reasoned that had plaintiff been involuntarily terminated by the company without cause, he might have been entitled to recover at least a pro-rata share of the promised bonus. *Id.* at 622.

In *Neisenderf*, the court held that because no promise was made to plaintiff that she would earn the bonuses simply by working during the fiscal year, she was not eligible to receive any of the bonus payments claimed. 143 Cal. App. 4th at 524. The terms of the bonus plan

5

required plaintiff to have satisfactory work performance and to not have been terminated for cause before the payout date. *Id.* However, because the plaintiff had been terminated for unsatisfactory work performance, she was found ineligible to receive the bonuses. *Id.* The court in *Neisenderf* explicitly stated that it expressed "no opinion on whether the result would be [the] same in this case if the jury found Neisenderf wrongfully discharged." *Id.* at 524 n.10. The court "merely note[d], '[t]he law does not support a forfeiture in these circumstances where the employees were terminated through no fault of their own after having substantially performed the services entitling them to a bonus.' Also, the question of fraud or bad faith is not before us, because there is no allegation Neisenderf was discharged for the specific purpose of depriving her of whatever rights she had acquired in the bonus plans." *Id.*

Contrary to *Schachter* and *Neisdenderf*, here, Plaintiff alleges and now proffers evidence that she was terminated in retaliation for complaining about the potential loss of commissions or to prevent her continued employment at the date of the payout. Plaintiff alleges that Defendant promised her that she would be entitled to the commissions and Defendant's failure to comply constitutes a breach. (FAC ¶ 8; *see also* Wood Decl., ¶¶ 8-11, 15, 16, 19-22.) Plaintiff further contends Defendant fired her to retaliate against her for complaining about her promised commissions and in order to prevent her from receiving commissions she claims to have earned. (FAC ¶ 10; Wood Decl. ¶ 19.)

Now, beyond mere allegations and after discovery, there remain disputed issues of fact with regard to the reason for Plaintiff's termination and the resulting failure of the condition precedent in her employment contract, to remain employed at the time of the buyout. The undisputed evidence demonstrates that Plaintiff was an at-will employee and the commissions promises were premised upon her continued employment. (*See* Steenhoek Decl., Ex. 2 at ¶ 6.) Plaintiff proffers evidence that she was a valued and well-regarded employee and that the timing of her termination – two weeks after she had escalated her demands to Human Resources and was told to drop her demand for commissions and six weeks prior to the preliminary deal with CNA – is proof that her termination was caused by the conflict over commissions and not by her performance. (Wood Decl., ¶ 19.) Although Defendant argues that the cause of

6

Plaintiff's termination from employment was her declining performance and proffers evidence of performance and team dynamic difficulties, Plaintiff also presents disputed issues of fact in this regard. Plaintiff proffers a series of good performance reviews, accolades and earnings, and indicates that personnel conflicts and the dispute over entitlement to commissions led to her termination and not her poor performance. (*See* Clapp Decl., Ex. Hagen Dep. at 71:21-73:18, Exs. 17, 18.)

Such remaining factual disputes preclude the Court from making a determination as a matter of law that the failure of the condition precedent to receive commissions, that is to remain in Defendant's employ, was caused by fraud or bad faith. The case law cited by this Court in its order denying Defendant's motion to dismiss still remains the governing principle. The same factual issue cannot be resolved at the motion for summary judgment stage. The finder of fact must first determine whether Defendant wrongfully discharged Plaintiff to prevent her from obtaining the commissions and stock. The Court denies summary judgment of Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims.

**C.    Violation of Labor Code 98.6 and Wrongful Termination Claims.**

Plaintiff alleges that Defendant wrongfully terminated her employment for retaliation in violation of California Labor Code section 98.6 and in contravention of fundamental public policy involving the prompt payment of wages due to an employee. (FAC, ¶¶ 42, 45.)

California Labor Code sections 200 *et seq.* express a public policy in favor of full payment of wages. California Labor Code section 98.6(c) provides that an employer may not discharge or retaliate against an employee who has made a written or oral complaint that he or she is owed unpaid wages. Protected activity that would support a Labor Code violation includes "the exercise by the employee . . . on behalf of himself, herself, or others of any rights afforded him or her" under the Labor Code. Cal. Lab. Code § 98(c). "[U]nder § 98.6, employers may not discharge or discriminate against an employee . . . for whistleblowing; for assigning wage claims to the Labor Commissioner resulting from demotion, suspension, . . . and for exercising 'any rights afforded him or her.'" *Turner v. City & Cnty. of San Francisco*, 892 F. Supp. 2d 1188, 1199 (N.D. Cal. 2012).

7

Defendant moves for judgment on Plaintiff's wrongful termination claim under the California Labor Code based on the contention that California law does not govern conduct that occurs outside the state.[1] Defendant proffers Plaintiff's testimony indicating that she only worked in Georgia. (*See* Steenheok Decl., Ex. A at 27:16-17.) Plaintiff does not contest this assertion of fact. Plaintiff merely contends that state labor statutes of California should apply because Plaintiff's employment agreement with Defendant contained a choice of law provision indicating that "the law of the Commonwealth of California shall govern this Agreement, without regard to conflict of laws principles." (*See id.*, Ex. 2, ¶ 9; Wood Decl., ¶ 23.)

However, state statutes such as the California Labor Code are presumed not to have extraterritorial effect. *See, e.g., North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916) ("Ordinarily the statutes of a state have no force beyond its boundaries. . . . Although a state may have the power to legislate concerning the rights and obligations of its citizens with regard to transactions occurring beyond its boundaries, the presumption is that it did not intend to give its statutes any extraterritorial effect."). A wage earner in California is subject to a state's wage orders, if the "employee resides in California, receives pay in California, and works exclusively, or principally, in California." *Tidewater Marine W., Inc. v. Bradshaw*, 14 Cal. 4th 557, 578 (1996).

Here, there appears to be no contention that Plaintiff was a California wage earner. She merely argues that the choice of law provision in her employment contract provides the protection of California's substantive labor laws. "This argument conflates statutory claims that exist independent of the contract with claims that arise from the agreement itself." *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1064 (N.D. Cal. 2014). Plaintiff's claims for wrongful and

---

[1] As it did when moving to dismiss, Defendant also moves for judgment on this claim on the basis that the commissions were future earnings not yet earned. *See Pashman v. Aetna Ins. Co.*, No. C-13-02835 DMR, 2014 WL 3571689, at *16-17 (N.D. Cal. July 18, 2014). The Court remains unpersuaded by this argument. The crux of the remaining dispute here centers on whether Defendant terminated Plaintiff in order to avoid payment of wages accrued by virtue of her earlier performance at the company. *See, e.g., Sinclair v. Servicemaster Co.*, No. 07-0611 FCD, 2007 WL 2254448, at *4 (E.D. Cal. Aug. 3, 3007) (denying motion to dismiss where plaintiff alleges that defendant terminated his position in order to avoid payment of wages accrued).

8

retaliatory termination do not arise out of an application or interpretation of her employment agreement. Rather, her entitlements under the contract are distinct from her rights under the applicable state law. "Even if the choice of law provision were intended to confer upon out-of-state [wager earners] a cause of action for violation of California's wage and hour laws, it could not do so. An employee cannot create by contract a cause of action that California law does not provide." *Id.* at 1065; *see also O'Connor v. Uber Technologies, Inc.*, 58 F. Supp. 3d 989, 1005 (N.D. Cal. 2014). The California Labor Code provisions contain geographical limitations and "when a law contains geographical limitations on its application, courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply." *Cotter*, 60 F. Supp. 2d at 1065 (citations omitted). Because the California wage and hour laws contains the limitation that they do not apply extraterritorially, "[p]arties cannot, by contract, extend its reach." *Id.*

Accordingly, because there is apparently no dispute of fact that Plaintiff was not a California wage earner, notwithstanding the choice of law provision in her employment contract, the California Labor Code does not provide a cause of action for wrongful termination in violation of public policy under California Labor Code section 200 *et seq.* or for retaliation under California Labor Code section 98.6. Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's seventh and eighth causes of action.

## CONCLUSION

For the foregoing reasons, the Court DENIES IN PART AND GRANTS IN PART Defendant's motion for summary judgment.

The parties participated in mediation in April. The mediator has indicated that the process was not complete and further facilitated discussions were expected. (*See* Docket No. 62.) Accordingly, the parties are hereby ordered to provide the Court with a joint updated status report on the anticipated progress of such settlement discussions by no later than July 11, 2016. Should the parties not reach settlement of this action by the pretrial conference in this matter set for August 8, 2016 at 2:00 p.m., the Court shall order the parties to a mandatory settlement

conference before a Magistrate Judge prior to the commencement of trial.

**IT IS SO ORDERED.**

Dated: June 30, 2016

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE